IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


STEVEN MYERS,                                  Case No. 3:13-cv-01639-TC

      Plaintiff,                            FINDINGS AND RECOMMENDATION

   v.

CAROLYN W. COLVIN,
Commissioner of Social
Security,

      Defendant.
_____

George J. Wall
Law Offices of George J. Wall
1336 East Burnside Street, Suite 130
Portland, OR 97214
    Attorney for plaintiff

S. Amanda Marshall
United States Attorney
Ronald K. Silver
Assistant United States Attorney
1000 S.W. Third Ave., Suite 600
Portland, OR 97201

Jeffrey R. McClain
Special Assistant United States Attorney
Social Security Administration
701 Fifth Ave., Suite 2900 M/S 221A
Seattle, WA 98104-7075
    Attorneys for defendant


1 - OPINION AND ORDER

COFFIN, Magistrate Judge:

Plaintiff brings this action pursuant to the Social Security Act (Act) to obtain judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying his application for Social Security disability insurance benefits (DIB) under the Act.  The Commissioner's decision should be affirmed and this case should be dismissed.

<u>DISCUSSION</u>

Plaintiff argues that the Administrative Law Judge (ALJ) erred by: 1) failing to find him severely impaired from a depressive disorder and a cognitive disorder before his date last insured; 2) finding that he could perform past relevant work or any work that requires him to stand or walk frequently; 3) failing to give sufficient weight to a statement from his spouse; and 4) failing to call a medical expert to determine his disability onset date. Pl.'s Br. 5.

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record.  <u>Hammock v. Bowen</u>, 879 F.2d 498, 501 (9th Cir. 1989).  Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (citation and internal quotations omitted).  In reviewing plaintiff's alleged errors, this

court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." <u>Martinez v. Heckler</u>, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. <u>Burch v. Barnhart</u>, 400 F.3d 676, 679 (9th Cir. 2005).

I. <u>Plaintiff's Disability Prior to His Date Last Insured</u>

Plaintiff argues that the ALJ failed to find him severely impaired from depressive and cognitive disorders before December 31, 2004, his date last insured. Pl.'s Br. 5-6. Specifically, plaintiff asserts that the ALJ erred by A) disregarding treatment records from 1999, which he argues establish existence of a mental health disorder prior to the date last insured; B) failing to give Dr. Bates-Smith's psychodiagnostic assessment controlling weight; and C) rejecting the opinion of Ruth McGovern, NP, as to whether he suffered from depression and a cognitive disorder prior to his date last insured. Pl.'s Br. 6-8.

A.    <u>Treatment Records from 1999</u>

Plaintiff argues that treatment records from 1999 provide "evidence of a mental health disorder prior to the date last insured" and the ALJ failed to address why that evidence did not support a finding that his cognitive disorder and depressive disorder were severe. Pl.'s Br. 7. Further, plaintiff argues that "his lack of medical treatment after 2000 was because he could not afford health insurance." Pl.'s Reply Br. 2.

The record reveals that plaintiff sought help for his mental health issues from Dr. Swanson, MD, and George Hannibal, MSW, LCSW, from May through August 1999 and that plaintiff "had no health insurance after approximately 2000." Pl.'s Br. 3; Tr. 58.

On May 6, 1999, Dr. Swanson opined that plaintiff was "occasionally depressed" and "mildly agitated at times," but was "re-directable and overall appropriate and pleasant." Tr. 694. Dr. Swanson prescribed plaintiff with medication for dysthymia and troubled sleep and referred him to mental health treatment with Mr. Hannibal. Id. On June 26, 1999, Dr. Swanson opined that plaintiff's psychological stress was "better" and his issues were being dealt with by Mr. Hannibal. Dr. Swanson also noted that Mr. Hannibal stated that he "was very agreeable to helping [plaintiff] find ongoing mental health [care] should his insurance coverage lapse for whatever reason." Tr. 687.

On August 19, 1999, Mr. Hannibal opined that plaintiff experienced a "moderate" major depressive disorder, his speech process was "clear and cogent," he had "somewhat flat effect but [was] very talkative," his thought content and perception were all in the "normal range," he "appear[ed] above average in intelligence," and "was motivated with some insight into what [was] going on for him emotionally."[1] Tr. 668. Mr. Hannibal also noted

---

[1] Mr. Hannibal, a licensed clinical social worker, is not a medical source. 20 C.F.R. §§ 404.1513(a), (d); Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1223-24 (9th Cir. 2010).

that plaintiff had one past suicidal attempt at age 25 or 26 but plaintiff, then 44, "denies a desire or a plan for suicide today." Tr. 667. Mr. Hannibal recommended that plaintiff attend "5 to 10 additional sessions over the next 6 months" and offered to "provide this service." Tr. 668. The record reveals that plaintiff did not return to see Mr. Hannibal for the recommended treatment or seek further mental health treatment from any other mental health care provider prior to his date last insured.

The ALJ found that in view of the mental health treatment records from 1999, plaintiff's "endorsements of mental health symptoms, and the opinions of Dr. Bates-Smith and Ms. McGovern," plaintiff had "severe medically determinable mental health impairments beginning in July 2010." Tr. 20. "If a claimant complains about disabling pain but fails to seek treatment, or fails to follow prescribed treatment, for the pain, an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated." Orn v. Astrue, 495 F.3d 625, 638 (9th Cir. 2007) (internal citations omitted). However, the claimant cannot be denied benefits for failing to obtain treatment that would ameliorate his condition if she cannot afford that treatment. Gamble v. Chater, 68 F.3d 319, 321 (9th Cir. 1995).

Here, the record reveals that Dr. Swanson, the only acceptable mental health medical source plaintiff saw in 1999, opined that plaintiff was only occasionally depressed, mildly agitated at

5 - OPINION AND ORDER

times, and his mental health issues were being dealt with by Mr. Hannibal. The record also reveals that Mr. Hannibal offered to treat plaintiff and agreed to help him find ongoing mental health care if his medical insurance coverage lapsed for any reason. Moreover, Mr. Hannibal recommended an additional five to ten treatments over the six month period following his last appointment with plaintiff on August 19, 1999. However, despite Mr. Hannibal's recommendation and availability to treat plaintiff notwithstanding the availability of health insurance, coupled with the fact that plaintiff actually had medical insurance for at least four months subsequent to Mr. Hannibal's recommendation, plaintiff did not complete the recommended treatment, nor seek any other mental health treatment during the last four months in 1999 while he was still insured. As such, this court finds that the ALJ did not err by finding that the 1999 treatment records did not provide evidence of a mental health disorder prior to plaintiff's date last insured.

    B.   <u>Weight Given to Dr. Bates-Smith's Assessment</u>

Plaintiff argues that "there is no evidence from 1999-2004 to contradict Dr. Bates-Smith, and her opinion should be given controlling weight." Pl.'s Br. 7. Further, plaintiff asserts that his lack of evidence during the relevant time period is because he "had no health insurance or ability to pay for medical treatment for part of the period in question." Pl.'s Reply Br. 2.

Dr. Bates-Smith, Ph.D., conducted a psychodiagnostic

assessment of plaintiff "based on a review of available records, clinical interviews, behavioral observations, and mental status" on July 29, 2010 and opined that he suffered from a depressive and cognitive disorder with an onset date that "was at least 2 years ago." Tr. 520.

The ALJ gave Dr. Bates-Smith's opinion "little weight," because it was inconsistent with plaintiff's minimal mental health treatment during the period in question, she used only a brief mental status examination to diagnose a cognitive disorder, and she did not conduct any objective testing. Tr. 19. The ALJ also noted that Dr. Bates-Smith's diagnoses was heavily reliant on plaintiff's self-reports, which she found only partially credible, and she did not account for plaintiff's daily activities in her opinion. Id.

With regard to plaintiff's self-reports that Dr. Bates-Smith relied on in forming her opinion of plaintiff, the ALJ noted that "the evidence in the record reflects the [plaintiff's] functional limitations were not as significant as alleged" because 1) his work history prior to the alleged disability onset date "raises questions as to whether [his] continuing unemployment is actually due to his medical impairments;" 2) his daily activities were not limited to the extent of his complaints of disabling symptoms and limitations; and 3) "the medical record does not support the alleged severity of [his] physical or mental impairments." Tr. 25-

7 - OPINION AND ORDER

26.   Upon examination of plaintiff's daily activities, the ALJ found that he was able to manage his personal care needs, prepare breakfast, do laundry, mow the lawn, do household repairs, walk, drive, shop, manage his money, go to school events, swap meets, and car shows.  Tr. 20, 25.

To reject an uncontradicted opinion of an examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence.  Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995).  If contradicted, the ALJ may reject the opinion with specific and legitimate reasons.  Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (citing Lester, 81 F.3d at 830-31).  A "physician's opinion of disability 'premised to a large extent upon the claimant's own accounts of [her] symptoms and limitations' may be disregarded where those complaints have been 'properly discounted.'"  Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 602 (9th Cir. 1999) (quoting Fair v. Bowen, 885 F.2d 597, 605 (9th Cir. 1989)).

Here, the record reveals that Dr. Bates-Smith opined that plaintiff's depressive and cognitive disorder onset date was two years prior to the July 2010 evaluation.  Thus, the record shows that Dr. Bates-Smith opined that plaintiff's depressive and cognitive disorders dated back to only 2008, three years after plaintiff's date last insured.  Consequently, plaintiff's argument that Dr. Bates-Smith's opinion relates back to 2004 or sooner

fails.    Further, plaintiff's argument that his lack of treatment during the period in question was due to a lack of insurance also fails.  As noted above, the records from 1999 reveal an unexplained failure to follow the treatment prescribed by Mr. Hannibal.   As such, this court finds that the ALJ did not err by rejecting Dr. Bates-Smith's opinion for the period of time prior to plaintiff's date last insured.

C.  <u>Weight Given to Ms. McGovern's Opinion</u>

Plaintiff argues that the ALJ erred by failing to give controlling weight to his treating nurse, Ruth McGovern, NP.  Pl.'s Br. 8.  Plaintiff also asserts that "Ms. McGovern was [his] primary treatment provider since at least August 8, 2001 and should be presumed to be very familiar with the plaintiff after seeing him on many occasions over an 11 year period."  Pl.'s Br. 10.  Further, plaintiff argues that Ms. McGovern "had access to other treatment records from that clinic as early as June 24, 1996" and as such, "the ALJ's assertion that Ms. McGovern's memory of plaintiff's impairments and conditions was suspect is simply wrong."  Pl.'s Reply Br. 4.

On a check the box mental residual functional capacity (RFC) evaluation submitted by plaintiff's attorney to Ms. McGovern on August 15, 2011, she stated that she treated plaintiff "off and on since 2004" and opined that plaintiff "does not appear to have memory issues" and was "not significantly limited" in his ability

9 - OPINION AND ORDER

to "perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances." Tr. 663, 665. Ms. McGovern also noted that she "cannot accurately speak to several of the above" questions on plaintiff's RFC analysis. Tr. 665. Further, Ms. McGovern noted that four of the eight questions on plaintiff's RFC were "not ratable on available evidence." Tr. 665. Moreover, although Ms. McGovern treated plaintiff for his alleged physical problems during the relevant time period, her examination notes of plaintiff make no mention of his alleged mental health problems. Tr. 342-43; 612. Nevertheless, on the RFC analysis completed in August of 2011, Ms. McGovern opined that plaintiff has been limited by a major depressive disorder, cognitive disorder, and generalized anxiety disorder, as diagnosed by Dr. Bates-Smith, Ph.D. on July 29, 2010, since on or before December 31, 2004. Tr. 663-64.

The ALJ gave the opinion of Ms. McGovern "very little weight" because she "is not a medically acceptable source," her opinion is inconsistent with plaintiff's mental health records during the relevant period, and her memory of plaintiff's impairments "seven years after his date last insured . . . seems suspect." Tr. 19.

Ms. McGovern, a nurse practitioner, is not a medical source. 20 C.F.R. §§ 404.1513(a); 416.913(a). An ALJ need only provide germane reasons to disregard lay opinions from other sources, such as a nurse practitioner. Turner v. Comm'r of Soc. Sec., 613 F.3d

1217, 1223-24 (9th Cir. 2010).

Here, the record reveals that Ms. McGovern was plaintiff's primary treatment provider since at least August 8, 2001.  However, on the check the box form submitted to Ms. McGovern on August 15, 2011, she claims to have seen plaintiff only since 2004 and only on an off and on basis.  Thus, the record reveals that Ms. McGovern did not remember seeing plaintiff for most of the relevant time period.  Moreover, when completing plaintiff's mental RFC analysis, Ms. McGovern stated that she could not accurately speak to several of the questions asked and was unable to answer half the questions due to a lack of available evidence.  Further, the record reveals that Ms. McGovern's examination notes are silent regarding plaintiff's alleged mental health issues, yet she asserts now that plaintiff suffered from a major depressive disorder, cognitive disorder, and generalized anxiety disorder during the relevant time period.

The evidence supports the ALJ's conclusion that Ms. McGovern's memory of plaintiff's impairments is suspect and that her opinion is inconsistent with the medical record.  As such, the ALJ did not err in finding that Ms. McGovern's opinion was not entitled to controlling weight.

II. <u>Plaintiff's Ability to do Past Relevant Work or Light Work</u>

Plaintiff argues that the Commissioner erred in finding that he could perform past relevant work as a mail sorter or do any work

in the light range that requires the ability to stand or walk frequently in an eight hour day. Pl.'s Br. 11. Plaintiff asserts that the treadmill stress tests administered in July and August of 1999 prove that he had the exertional ability to do only sedentary work and that there is nothing in the record to indicate that he was ever able to perform at a higher exertional level. Pl.'s Br. 11-12.

The ALJ noted that plaintiff was diagnosed with coronary heart disease, but has been "usually asymptomatic," he has "presented with only minimal, if any, cardiac symptoms," and "his condition was well controlled with medication." Tr. 23, 24, 26.

Plaintiff underwent a treadmill stress test on July 21, 1999 that revealed "subjectively positive" results and a "fair" functional capacity "consistent with a sedentary person." Tr. 683. Plaintiff experienced no chest pain, but did report having back pain that was controllable with nitroglycerine. Id. During this test, plaintiff presented "no significant abnormalities" and stopped the test because he was exhausted. Id.

Additionally, a treadmill stress test administered on August 2, 1999 revealed "objectively normal" results and that plaintiff exercised "consistent with [the] functional capacity of that of a sedentary person." Tr. 679. Moreover, the treadmill test revealed that plaintiff's alleged back pain was controllable with aspirin and nitroglycerine, "which he has not used." Tr. 680.

12 - OPINION AND ORDER

Similarly, a treadmill test administered on August 12, 1999 revealed a "fair" functional capacity consistent with a sedentary person. Tr. 677. The test results were "negative by EKG criteria, but subjectively positive for mild version of referring sympton." Id. Plaintiff again terminated the test due to exhaustion.

Disability opinions are reserved for the Commissioner. 20 C.F.R. §§ 404.1527(e)(1); 416.927(e)(1). However, physicians may provide opinions on the ultimate issue of disability, for example, whether a claimant is capable of any work, given the claimant's limitations. Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001). The ALJ is not bound by the uncontroverted opinions of physicians on disability, but cannot reject them without presenting clear and convincing reasons for doing so. Reddick, 157 F.3d at 725. A treating physician's opinion on disability, even if controverted, can be rejected only with specific and legitimate reasons supported by substantial evidence in the record. Id. Limitations supported by substantial evidence must be incorporated into the residual functional capacity and, by extension, the dispositive hypothetical question posed to the VE. Osenbrock v. Apfel, 240 F.3d 1157, 1163-65 (9th Cir. 2001).

Here, plaintiff's argument that the treadmill tests prove that he had the exertional ability to do only sedentary work fails. The record reveals that plaintiff's treadmill tests were objectively normal and the results were consistent with those of a sedentary

13 - OPINION AND ORDER

person, not that plaintiff could do only sedentary work.  Further, the tests revealed that plaintiff's alleged pain is controllable with medications, which plaintiff failed to use.  As stated above, the failure to follow prescribed treatment is an acceptable basis for finding plaintiff's complaint unjustified or exaggerated. Accordingly, plaintiff's argument, which is contingent upon a finding of harmful error in regard to these issues, is without merit.  Bayliss, 427 F.3d at 1217-18 ("The hypothetical that the ALJ posed to the VE contained all of the limitations that the ALJ found credible and supported by substantial evidence in the record. The ALJ's reliance on testimony the VE gave in response to the hypothetical therefore was proper.").  Accordingly, plaintiff's argument fails.

III. Weight Given to Plaintiff's Spouse's Opinion

Plaintiff argues that the ALJ failed to give sufficient weight to the statement from his spouse, Rhonda Myers, who claimed that plaintiff experienced significant changes in his behavior after an incident in 1999 where he inhaled fumes at work. Pl.'s Br. 12.  In 2009, Ms. Myers stated that plaintiff had difficulties with lifting, squatting, walking, kneeling, memory, concentration, and using his hands.  Ms. Myers also stated that plaintiff can lift only twenty-five pounds with help, he drops things often, and he can pay attention for only a few minutes. Tr. 25, 234.

The ALJ considered Ms. Myers' above statements from December

14 - OPINION AND ORDER

2009 and gave her statements regarding plaintiff's daily activities "moderate weight" and gave "little weight" to her statements pertaining to his limitations and capabilities during the time frame from the alleged onset date through the last date insured. Tr. 25. The ALJ reasoned that Ms. Myers' lacked the expertise to evaluate plaintiff's medical conditions and her statements were based on plaintiff's subjective complaints and statements, which as discussed above, were properly disregarded. Id.

Lay testimony as to a claimant's symptoms is competent evidence which the Commissioner must take into account. Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993). The ALJ must give specific reasons for discounting the testimony of lay witnesses regarding a claimant's physical condition, as lay witnesses often can tell whether someone is suffering or merely malingering. Dodrill, 12 F.3d at 919.

To reject lay evidence, the ALJ "must give reasons that are germane to each witness." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001). However, "in interpreting the evidence and developing the record, the ALJ does not need to discuss every piece of evidence." Howard Ex Rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003). "[W]here the ALJ rejects a witness's testimony without providing germane reasons, but has already provided germane reasons for rejecting similar testimony, [a court] cannot reverse the agency merely because the ALJ did not 'clearly link his

15 - OPINION AND ORDER

determination to those reasons.'" <u>Molina v. Astrue</u>, 674 F.3d 1104, 1121 (9th Cir. 2012), <u>quoting Lewis v. Apfel</u>, 236 F.3d 503, 512 (9th Cir. 2001).    Finally, reviewing courts "may not reverse an ALJ's decision on account of an error that is harmless." <u>Molina v. Astrue</u>, 674 F.3d, 1104, 1111 (9th Cir. 2012).

Here, I reject plaintiff's argument that the ALJ failed to give sufficient weight to the Ms. Myers' statements from 2009.  The record indicates that the ALJ took into consideration Ms. Myers' statements regarding plaintiff's limitations and capabilities during the relevant time period.  The record further indicates that the ALJ found that Ms. Myers' lacked the expertise to evaluate plaintiff's medical conditions and the statements were based on plaintiff's subjective complaints and statements, which she found not credible.  Consequently, the ALJ gave sufficient reasons for rejecting the lay testimony of Ms. Myers.

IV. <u>Medical Expert to Determine Disability Onset Date</u>

Plaintiff argues that the ALJ erred by failing to call one or more medical experts to express an opinion regarding plaintiff's disability onset date. Pl.'s Br. 13.  Plaintiff asserts that "the theory of his case is that the combination of preexisting psychological problems and . . . cognitive deficits and depression [developed] sometime after 1999 . . . rendered him unable to work before his last date insured in 2004."  Pl.'s Reply Br. 2.

SSR 83-20 requires the ALJ to "call on the services of a

16 - OPINION AND ORDER

medical advisor when onset must be inferred." Armstrong v. Comm'r, 160 F.3d 587, 589 (9th Cir. 1998).  The ALJ has an independent duty to fully develop the record.  Higbee v. Sullivan, 975 F. 2d 558, 561-62 (9th Cir. 1992).  However, the ALJ's duty to develop the record is triggered "only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001). The duty to develop the record is triggered when an ambiguous onset date arises, but the duty does not extend to a silent record that does not support disability.  Armstrong, 160 F.3d at 589-90.

Here, there is medical evidence regarding plaintiff's condition back to 1999 when he first claims to have become disabled.  However, as mentioned above, there is no evidence to support a conclusion that plaintiff was disabled prior to his date last insured.  As such, the ALJ did not err by failing to call one or more medical experts to express an opinion regarding plaintiff's disability onset date.

CONCLUSION

For the reasons stated above, the Commissioner's decision should be AFFIRMED and this case should be DISMISSED.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of appeals.  Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's

17 - OPINION AND ORDER

judgment or appealable order.  The parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the court. Thereafter, the parties shall have fourteen (14) days within which to file a response to the objections.  Failure to timely file objections to any factual determination of the Magistrate Judge will be considered as a waiver of a party's right to *de novo* consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to this recommendation.

DATED this __5__ day of December 2014.


THOMAS M. COFFIN
United States Magistrate Judge

18 - OPINION AND ORDER